UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARLES ALLAN REY and DOLORES ANN REY, | ) ) | No. 04 B 35040 |
| | ) | |
| Debtors. | ) | Judge Goldgar |
| | ) | |
| NEWSUB MAGAZINE SERVICES LLC and GIFT SERVICES LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 04 A 4446 |
| CHARLES ALLAN REY and DOLORES ANN REY, | ) ) | |
| Defendants. | ) | |
| | ) | |
| VERTRUE INCORPORATED, | ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 04 A 4443 |
| CHARLES ALLAN REY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court for ruling are the motions of debtor-defendants Charles and Dolores Rey to dismiss the complaints in two adversary proceedings. The first complaint is brought by Vertrue Incorporated ("Vertrue") against Charles Rey. The second complaint is brought by NewSub Magazine Services and Gifts Services

(collectively "NewSub") against both Charles Rey and Dolores Rey. The complaints differ in certain respects, but all three plaintiffs had essentially the same relationship with the debtors and their business, the complaints allege similar if not identical facts, and the debtors have moved to dismiss both complaints for much the same reasons. Therefore, it is economical to consider the debtors' motions in the two adversaries together.[1]

Greatly simplified, the facts alleged in the complaints are as follows. Vertrue sells products and services of an unspecified nature. In 1993, Vertrue entered into an agreement with an Illinois company called Heartland Direct, Inc. ("Heartland"). Charles Rey is Heartland's president and majority shareholder. Dolores Rey is its secretary. Under the agreement, Heartland would market Vertrue's products and services to various oil companies. In return, Heartland and the oil companies would receiv a percentage of the sales revenue as a commission.

In 1997, Heartland entered into an agreement with Chevron, a well-known oil company, to offer products and services to Chevron credit card customers through direct mail promotions. Vertrue's products and services were among those offered. A Chevron credit card holder who bought Vertrue's products or services would have the cost charged to his Chevron credit card. Chevron would collect the money from the sales, retain a 20% commission, and remit the balance to Heartland. Heartland would then take its commission and remit what was left to

---

[1] For ease of discussion, this opinion will also treat the two complaints as if they had both named Charles and Dolores Rey as defendants and both Reys had moved to dismiss.

Vertrue.

NewSub sells magazine subscriptions and other products, chiefly through inserts in credit card statements. NewSub had an arrangement with Chevron and Heartland similar to Vertrue's. Under it, Chevron would include inserts advertising NewSub subscriptions and products to Chevron credit card customers in exchange for a commission. Heartland served as Chevron's broker and would collect the monies Chevron remitted from the sales of NewSub subscriptions and products, taking a commission and then sending the balance along to NewSub.

In 2001 and 2002, respectively, the flow of money from Chevron to NewSub and Vertrue stopped. Heartland had collected from Chevron a large sum owed to NewSub and Vertrue – roughly $2.3 million – but Heartland failed to pass the money on as it was obliged to do. Instead, Charles Rey took the money, appropriating it for his own personal use. According to Vertrue, Dolores Rey was a willing participant in the appropriation. Heartland (which is now a debtor in bankruptcy itself) was insolvent at all relevant times.

NewSub's adversary complaint has two counts. Count I alleges a non-dischargeability claim under section 523(a)(4), apparently based on embezzlement. Count II is a non-dischargeability claim under section 523(a)(6) for willful and malicious injury to NewSub.

Vertrue's complaint, meanwhile, has six counts. Echoing NewSub's complaint, the first two counts allege non-dischargeability claims under sections 523(a)(4) and (6). Unlike NewSub, however, Vertrue bases its section 523(a)(4) claim, not just on embezzlement, but on fraud or defalcation by a fiduciary. The

-4-

remaining counts in Vertrue's complaint are state law claims for conversion, "civil theft," "unfair trade practices," and breach of fiduciary duty.[2/]

The Reys have now moved under Rule 12(b)(6) to dismiss both complaints in their entirety for failure to state a claim. For the following reasons, the motions are denied.

The Reys first argue that the complaints should be dismissed because NewSub and Vertrue lack standing to bring claims under section 523(a) – standing in the statutory rather than the Article III sense. *See Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 223 (Bankr. N.D. Ill 2003) (explaining the difference). The standing argument is not particularly coherent, but the Reys seem to be saying that they themselves had no contractual relationship with NewSub and Vertrue. The only contracts alleged were with Heartland. Therefore, the Reys assert, neither NewSub nor Vertrue is a "creditor" under section 523(c)(1) entitled to bring an action under section 523(a).

The Reys are mistaken. The Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). To be a creditor with standing under section 523(c), then, NewSub and Vertrue need only have a "claim" against the Reys that arose before they filed their bankruptcy petition.

---

[2/] Some of these counts, though not all, appear to be counts from a complaint Vertrue filed against Heartland and Charles Rey in Connecticut Superior Court in 2003. Connecticut has a statutory action for "civil theft," *see* Conn. Gen. Stat. § 52-564 (1991), and there is a private right of action under the Connecticut Unfair Trade Practices Act, *see* Conn. Gen. Stat. § 42-110g (2000). Vertrue's Connecticut action apparently was still pending when the Reys filed bankruptcy.

-5-

The Code's definition of claim is "expansive." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 558 (1990). "Claim" encompasses any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). In section 101(5), Congress contemplated that "all legal obligations of the debtor" would "be dealt with in the bankruptcy case," *Davenport,* 495 U.S. at 558 (internal quotation omitted), and so adopted "the broadest available definition of 'claim,'" *Johnston v. Home St. Bank,* 501 U.S. 78, 83 (1991).

NewSub and Vertrue are plainly creditors under this definition. They allege that the Reys made off with a large amount of money, money that was rightfully theirs, and that the Reys should be held accountable in damages. A person who asserts that he deserves damages because the debtor stole a large amount of money that was rightfully his is asserting a "right to payment" and so has a "claim." Because he has a "claim," he is a "creditor" and thus has standing under sections 523(c) and 523(a). It makes no difference here that the contracts NewSub and Vertrue had were with Heartland rather than with the Reys, that NewSub and Vertrue might have rights under those contracts, and that they might have a claim in Heartland's bankruptcy as well. Contract rights against Heartland in no way preclude other kinds of rights against the Reys.

The rest of the Reys' arguments can be quickly dispatched. The Reys insist that the complaints here should be dismissed because they fail to allege certain "facts" and "elements," facts and elements the Reys say are essential to the claims.

-6-

So, for example, the Reys assert that the complaints fail to allege facts showing the express trust necessary for a fiduciary duty claim under section 523(a)(4), the segregated account needed for an embezzlement claim under that section, and the specific fund required for a conversion claim under section 523(a)(6). At several points, the Reys contend that the plaintiffs here have failed to "establish" or "prove" their claims.

As Vertrue correctly notes in its response, the Reys' contentions betray a misunderstanding of federal notice pleading and the test for dismissal under Rule 12(b)(6). The question at the dismissal stage, first of all, is not what the plaintiff has "established" or "proved." To survive a motion to dismiss for failure to state a claim, the Seventh Circuit recently remarked, "the plaintiff does not have to 'show' anything; he need only allege." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). What the plaintiff "did or did not show" is of no concern at this point in the case. *Id.*

Second, the notice-pleading regime under Rule 8 does not require allegations of particular facts. In federal court, a plaintiff "need not plead facts." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). A complaint therefore "cannot be dismissed on the ground that it . . . fails to allege facts." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *see also Mannheim Automotive Fin. Servs., Inc. v. Park (In re Park)*, 314 B.R. 378, 384 (Bankr. N.D. Ill. 2004). Nor is it necessary for a complaint to allege a claim's "elements," making the complaint subject to dismissal if one element or another is absent. *See Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (noting that "there is no requirement in federal suits of pleading . . .

the elements of a claim"). Complaints need not allege "facts and legal theories" because "the federal rules do not require plaintiffs to plead either facts or law." *Johnson v. Wattenbarger,* 361 F.3d 991, 994 (7th Cir. 2004).

The question on a motion to dismiss is not whether the complaint alleges the right facts or the right law. The question is whether it contains "the bare minimum" of information "necessary to put the defendant on notice of the claim so that he can file an answer." *Brown,* 398 F.3d at 908. "A complaint need only state the nature of the claim; details can wait for later stages." *Alliant Energy Corp. v. Bie,* 277 F.3d 916, 919 (7th Cir. 2002); *see also McCormick v. City of Chicago,* 230 F.3d 319, 324 (7thCir. 2000) (noting that complaint need contain just enough to "allow the court and the defendant to understand the gravamen" of the claim). That a complaint lacks certain facts that might later have to be proved at trial is beside the point, as long as it is "possible to hypothesize [those] facts." *Graehling v. Village of Lombard,* 58 F.3d 295, 297 (7th Cir. 1995).

The complaints here easily pass this relaxed test. Both give information – somewhat more information, in fact, than the summary in this opinion – sufficient to notify the Reys of the gist of the section 523(a)(4) and (6) claims against them and allow them to answer. As for the facts and elements the Reys say are critical to the claims here,[3] it is easy enough to hypothesize them: that there was some kind of express trust of which the Reys were trustees, that there was a specific fund the Reys appropriated, that there was a segregated account into which monies from

---

[3] With one exception discussed below, there is no reason at this point in the litigation to decide whether they really are critical.

Chevron were deposited before distribution to NewSub and Vertrue.

The only aspect of the claims requiring further treatment is Vertrue's section 523(a)(4) claim premised on defalcation or fraud by a fiduciary. Further treatment is necessary because Vertrue has not seen fit to rest on its relatively sparse allegations, as it could have done, but has wedded itself in its response memorandum to a particular legal theory. Vertrue argues that no express trust is necessary under section 523(a)(4), and that the fiduciary duty an insolvent corporation's officers owe creditors is sufficient to maintain the claim. The Reys disagree.

Vertrue has the better of this one, too. At least in this circuit, a section 523(a)(4) claim can be based on a fiduciary relationship other than one arising from an express trust. *See In re Frain,* 230 F.3d 1014, 1017 (7th Cir. 2000); *In re Marchiando,* 13 F.3d 1111, 1115-16 (7th Cir. 1994). A fiduciary relationship to support a claim under section 523(a)(4) can also stem from "a difference in knowledge or power" between the claimed fiduciary and principal, giving "the former a position of ascendancy over the latter." *Marchiando,* 13 F.3d at 1116; *see also In re Woldman,* 92 F.3d 546, 547 (7th Cir. 1996) (noting that fiduciary obligation will arise when there is "substantial inequality in power or knowledge" favoring the debtor over the creditor).

Although decisions in Illinois are split, the majority (and the more recent decisions) have treated officers and directors of insolvent corporations as fiduciaries of the corporation's creditors for purposes of section 523(a)(4). *See Energy Prods.*

-9-

*Engineering Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 402-04 (S.D. Ill. 1994); *Salem Servs., Inc. v. Hussain (In re Hussain)*, 308 B.R. 861, 867-68 (Bankr. N.D. Ill. 2004); *but see Barber v. Martin (In re Martin)*, 162 B.R. 710, 714 (Bankr. C.D. Ill. 1993). *Reuscher* explains that an officer of an insolvent corporation fits the notion of a fiduciary described in *Marchiando*: a corporate officer and a creditor may have operated on an equal basis during good times, transacting business at arms-length, but when the corporation becomes insolvent the creditor "loses this position of equal knowledge."[4/] *Reuscher*, 169 B.R. at 404.

Finally, though the Reys move to dismiss Vertrue's entire complaint, the only reason they supply to dismiss the four state law counts is that these counts "are not asserted pursuant to 11 U.S.C. § 523 and do not reference that statute."

That is not a reason. It appears Vertrue is attempting in its adversary complaint to accomplish two goals: (1) liquidate the debt, and (2) establish that debt's non-dischargeability. The state law claims are designed to accomplish the first goal. Some bankruptcy courts have expressed reluctance to liquidate debts, preferring to leave that task to courts of general jurisdiction, *see Michener v. Brady (In re Brady)*, 234 B.R. 652, 663 (Bankr. E.D. Pa. 1999), but a creditor is entitled to kill two birds with one stone in the bankruptcy court if he wants, *see, e.g., Cohen v. de la Cruz*, 523 U.S. 213 (1998); *In re Bero*, 110 F.3d 462 (7th Cir. 1997); *In re*

---

[4/] Courts elsewhere have generally reached the same conclusion. *See Casini v. Graustein (In re Casini)*, 307 B.R. 800, 818 (Bankr. D.N.J. 2004) (questioning the decisions reaching this conclusion as tending to "sweep in too many debtors deserving a fresh start," but acknowledging that "a substantial body of case law" supports it).

*Lamarre,* 269 B.R. 266 (Bankr. D. Mass. 2001); *Headrick v. Atchison (In re Atchison),* 255 B.R. 790 (Bankr. M.D. Fla. 2000).

## Conclusion

The motion of debtors Charles and Dolores Rey to dismiss the complaint of NewSub Magazine Services LLC and Gifts Services LLC in No. 04 A 4446 is denied. The motion of debtor Charles Rey to dismiss the complaint of Vertrue Incorporated in No. 04 A 4443 is denied.

Dated:   April 18, 2005

ENTER: _____
A. Benjamin Goldgar
United States Bankruptcy Judge